No. 12,618.

DOHERTY *v.* SHORT.
(14 P. [2d] 484)

Decided September 12, 1932.

Messrs. LEE, SHAW & McCREERY, for plaintiff in error.

Mr. JAMES D. PARRIOTT, Mr. ARTHUR H. LAWS, for defendant in error.

*In Department.*

241

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

GENEVIEVE J. Short brought an action against Henry L. Doherty, doing business under the firm name of Henry L. Doherty and Company, to recover a money judgment on a written contract. The defendant demurred to an amended complaint; the demurrer was overruled, defendant elected to stand thereon, judgment was rendered accordingly, and defendant brings the case to this court on writ of error. We refer to the parties as plaintiff and defendant, as aligned at the trial.

Omitting formal allegations, the amended complaint alleges that on September 10, 1929, plaintiff entered into an agreement with defendant through its salesman to purchase 20 shares of common stock of Cities Service Company at the agreed price of $53.50 per share; that said contract is as follows:

"Date 9-10-1929
FT 16631

"To Henry L. Doherty & Co.,
436 G. & E. Bldg., Denver, Colo.

"The undersigned agrees to purchase 20 par value shares of Cities Service Common @ 53½, subject to confirmation, $150.00 paid herewith being initial payment on this order, and agrees to pay $92-00/100 on the first day of each month hereafter, beginning Oct., 1929.

"This contract becomes automatically cancelled if the purchaser's payments due on the first of each month are not made on or before the first of the following month; and, in such event, the company will refund the amount theretofore paid, less or plus, as the case may be, the difference between the contract price and the market bid price of the fifteenth of the month preceding; and less also an amount, as liquidated damages, equal to ten per cent of such market bid price. Interest at the rate of 6% per annum will be paid on partial payments upon final settlement. Partial payments may be anticipated. In

no event will the shares be delivered until 10 months after the date hereof, even though payment in full be theretofore made.

"No provision of this contract may be waived by any agent or representative of Henry L. Doherty & Company.

"Purchaser's Signature    Genevieve J. Short."

Plaintiff also alleges in substance that defendant receipted for the initial payment of $150, confirmed the contract and sent her a statement for the installment due October 1st, which she paid on October 7th, but that she failed to pay the $92 due November 1, which failure, she declares, automatically cancelled the contract. It is further alleged that the market bid price of the stock on October 15, 1929, was $68.50 per share, or $15 per share more than the contract price. Other allegations are repetitious of the contents of the contract, with conclusions of the pleader as to its effect. Plaintiff sought and recovered judgment for the $242 which she had paid, plus $300, the difference between the contract price and the market priec on October 15th, less $137 or 10 per cent of such market price, with a net result of $405, the amount of the judgment.

The sole question is whether the market bid price is determinable as of October 15th, as claimed by plaintiff and adjudged by the district court. If it is true, as plaintiff alleges, that her failure to make payment on November 1st, instantly and automatically caused the cancellation of the contract on that day, then, the fifteenth day of the preceding month, that is, October 15th, is the correct date for the computation of the price, and the judgment is right. But defendant contends that this is wrong; that the contract was not automatically cancelled until December, so that the 15th of the preceding November is the true date for such computation. If defendant's position is tenable, the judgment must be reversed.

The contract itself clearly and unequivocally answers

the argument. It declares that the "contract becomes automatically cancelled if the purchaser's payments due on the first of each month are not made on or before the first of the *following month; and in such event,* the company will refund * * *" etc. (Italics are ours.) We do not see how language could have been plainer; plaintiff could have made her November payment as late as December 1st without risk of forfeiture; defendant could not declare a default until then, and so the contract was not automatically cancelled until after the expiration of that day, or at least until the close of business hours. The words, "the market bid price of the fifteenth of the month preceding," of course, designate the month *immediately* preceding the date of forfeiture, otherwise almost any antecedent month while plaintiff was not even in default might do. Such an uncertainty would not have been fair to either party, and it is not contained in the instrument. The extra month allowed plaintiff as days of grace was ostensibly for her own benefit; it shears the contract of suspicion of abrupt or harsh business measures, and the contract having been automatically cancelled in December, the price is determinable as of November 15th. The amended complaint is fatally defective for failure to show the price on that day; the allegation as to the price on October 15th is wholly immaterial and the demurrer should have been sustained.

It cannot be said that defendant overreached plaintiff by deliberately choosing a date of cancellation most favorable to the former's interests, since it is not apparent that on September 10, 1929, when the contract was executed, he could predetermine whether the following October 15th or November 15th would be the best for him. Neither do we suppose that on September 10th he could reasonably anticipate when, if ever, plaintiff would default, with the consequent automatic termination of the contract. Certainly, plaintiff could control this event better than defendant. No fraud or mistake is alleged; fluctuations of the stock market, subsequent to the execu-

tion of the contract, are discussed in the briefs, as a matter of painful history, but it would render the contract abortive to capriciously readjust it in order to conform to the stock ticker. It cannot be done.

The gist of an unusual objection by plaintiff to the contract as here interpreted is that it is cleverly designed to limit her uninterrupted vision of current stock quotations, so as to prevent her from accurately gauging the most opportune time, if ever, to fail to make her monthly payments as required by the contract, and thereby make a profit or avert a loss. To illustrate: With the days of grace allowed plaintiff, she had until December first to make her payment due on November first, but if the price is determinable as of October 15th, as her counsel claim, instead of November 15th, it would thereby afford her approximately an extra thirty days within which to look back over the stock market, and compare October and November quotations before deciding whether it would be best to cease further payments. The objection is fallacious, even though the contract is thus limited. Plaintiff promised to pay the sum of $53.50 per share for 20 shares of Cities Service common, amounting to the sum of $1,070, and to make monthly payments with regularity. She may have been secretly undecided whether she would comply with these terms, but the legal presumption is that she intended to fully perform her self-imposed obligation, and the consequences of failure to do so are plainly set forth in the written instrument. Defendant may have intended to make it uninteresting for plaintiff not to carry out the contract, but we cannot say, merely because the contract did not fully enlighten either, party as to when it would be most profitable to avoid its terms, that such omission calls for the reformation of the instrument, or that it should incur the displeasure of the chancellor. The stability of plaintiff's promise well may have been the very thing that defendant wished to insure. Installment contracts are usually worded to encourage performance, not to promote a breach, and this

case is no exception. Such contracts frequently call for the absolute forfeiture of all previous payments in case of default; this one contains special concessions, but whatever they are, defendant cannot be compelled to perform more than he promised.

[3] We have not overlooked plaintiff's argument that defendant's purpose was artfully concealed between the lines, but the complaint or amended complaint does not support the assertion. The contract clearly states when and upon what contingency it will be cancelled, as well as the date from which to compute the market price of the stock. It does not declare that such price is determinable as of the month *before* the month preceding cancellation, or two calendar months back, but such is the effect of the judgment. The principle that an ambiguous contract will be construed most strictly against the one who wrote it has no application, since there is no ambiguity.

The judgment is reversed and the cause remanded with directions to sustain the demurrer.

MR. JUSTICE BUTLER, MR. JUSTICE CAMPBELL and MR. JUSTICE MOORE concur.